IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES RAY BAKER, JR., #1608922, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | 3:11-CV-0675-P (BK) | |
| § | | |
| BOB L. ALFORD, et al., § | | |
| Defendants. § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and Special Order 3, this case was referred for screening. For the reasons set out below, it is recommended that this case be dismissed *sua sponte* for failure to state a claim.

**I. BACKGROUND**

Plaintiff, a state inmate confined within the Texas Department of Criminal Justice, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 against Johnson County Sheriff Bob L. Alford, Lieutenant Pruitt, Dr. Bris Wusterhausen, and Community Education Centers ("CEC"). The Court did not issue process pending preliminary screening, but issued a questionnaire to obtain information about the factual basis of the complaint. Plaintiff answered the questionnaire (Doc. 11) and paid the $350.00 filing fee.[1]

The complaint and answers to the questionnaire present claims stemming from Plaintiff's fall due to a defective footstool, and the denial of a MRI to conclusively determine the extent of his injuries. (Doc. 2 at 4, 6.) Plaintiff alleges Sheriff Alford, Lieutenant Pruitt, Dr.

---

[1] Plaintiff initially filed this case in the Fort Worth Division, which in turn transferred it to this Court. Thereafter, Plaintiff voluntarily moved to dismiss Defendant Johnson County Sheriff's Department.

Wusterhausen, and CEC "acted with deliberate indifference in active participati[on] and concert to violate [his] civil rights." (*Id.* at 6.) He states that Sheriff Alford and Lieutenant Pruitt "had prior knowledge of the defective equipment," but neglected to correct the defective equipment until almost two months later. (*Id.*) He further states Dr. Wusterhausen and CEC "opt[ed] for the less expensive CT-scan, placing financial consideration ahead of [his] serious medical need." (*Id.*) Plaintiff demands $4,100 for pain and suffering. (*Id.* at 4; Doc. 11 at Answer 13.)

**Relevant Facts**

On August 18, 2009, Plaintiff was escorted to the Johnson County Courthouse for a court appearance and an officer provided him a footstool to exit the county van. (Doc. 2 at 4.) Unbeknownst to Plaintiff, the footstool was "missing the rubber non skid stoppers" and, as Plaintiff stepped out of the van, the footstool slipped and he fell, injuring his lower back. (*Id.*) Plaintiff immediately informed Officer Fonville, who advised Plaintiff that he had reported the defective footstool over a month earlier. (*Id.*) Plaintiff later learned that, as a result of the same defective stool, Officer Knight and Inmate Kevin Moffit also injured themselves. (*Id.*; Doc. 11 Answer 4-5.) Lieutenant Pruitt, however, did not take corrective action until September 23, 2009, when he directed that a nonstick mat be placed under the stool. (Doc. 11 Answer 5.)

Following his fall, Plaintiff was examined by a nurse and Dr. Wusterhausen at the Johnson County Jail and by emergency room personnel at Texas Health Resources. (Doc. 2 at 9; Doc. 11 at Answer 7, 11.) In addition to steroid and pain medications, Plaintiff received a x-ray and a CT-scan; and based on the later, it was concluded that the rods and pins in his back (from an earlier back surgery) "were within tolerable limits." (Doc. 11 at Answer 7, 9, 11.) Although Plaintiff continued to suffer from pain in his lower pelvic area, with slight numbness in one leg,

2

Dr. Wusterhausen refused his repeated requests for a MRI. (*Id.*) Plaintiff does not anticipate full recovery until he is able to see a specialist upon release from confinement. (Doc. 11 at Answer 10, 12.)

## II. ANALYSIS

Although Plaintiff paid the $350.00 filing fee, his complaint is subject to preliminary screening under 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579 (5th Cir. 1998) (section 1915A statutory screening provision applies to all prisoners' actions against governmental entities, their officers and employees, regardless of whether prisoner is proceeding *in forma pauperis*). Section 1915A(b) provides for *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.

The Court liberally construes Plaintiff's filings with all possible deference due a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers). Even under this most liberal construction, the complaint should be dismissed as frivolous.

### A. Slip and Fall

Plaintiff seeks to recover damages from Sheriff Alford and Lieutenant Pruitt for injuries allegedly sustained when he fell from a defective stool as he stepped out of a county van. Plaintiff, however, fails to state a non-frivolous claim against Defendants, therefore, his

complaint should be dismissed.

The United States Supreme Court has made clear that negligent conduct on the part of state officials is not actionable under section 1983. In *Daniels v. Williams*, a prisoner sued prison officials under section 1983, alleging that he was injured when he slipped on a pillow negligently left on a staircase by a correctional deputy. *Daniels v. Williams*, 474 U.S. 327, 328 (1986). The Supreme Court held that negligent conduct on the part of state officials does not rise to a constitutional violation under the Due Process Clause of the Fourteenth Amendment. *Daniels*, 474 U.S. at 332-33. Historically due process has applied only to "*deliberate* decisions of government officials to deprive a person of life, liberty or property," and to "secure the individual from the arbitrary exercise of the powers of government." *Id.* at 331 (emphasis in original) (quotation marks and citations omitted).

> Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

*Id.* at 332.

Likewise, in *Davidson v. Cannon,* the Supreme Court concluded that "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). "[W]here a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Id*. At 347. Daniels involved a civil rights suit brought by a prisoner who was injured by a fellow prisoner after prison officials negligently failed to take action to protect the inmate. *Id.*, 474 U.S. at 345-46.

4

Here, the complaint and answers to the questionnaire, even when liberally construed to raise a claim under the Due Process Clause of the Fourteenth Amendment, are devoid of any allegations supporting a constitutional deprivation. Plaintiff's assertion that Sheriff Alford and Lieutenant Pruitt had prior knowledge of the defective stool but failed to repair or change it, subsequently resulting in Plaintiff's fall (Doc. 11 Answer 4, 5) constitutes negligence at most. *See Kennedy v. Sollie*, 2007 WL 2561693 (S.D. Miss. 2007) (prisoner's claim for injuries to back sustained as result of slip-and-fall in puddle of water on prison floor caused by officials' failure to repair leaky window amounted to nothing more than negligence). Plaintiff does not allege that Sheriff Alford and Lieutenant Pruitt intended to injure him in any way, and couches his assertions in terms of "neglect and/or indifference to premises [sic] liabilities." (Doc. 11 Answer 5.) Moreover, insofar as Plaintiff seeks to challenge the conditions of his confinement because of the defective stool, his allegations are clearly insufficient to assert Defendants Alford and Pruitt were deliberately indifferent to a substantial risk of serious harm. *See Noble v. Grimes*, 350 Fed. Appx. 892, 893 (5th Cir. 2009) (unpublished *per curiam*) (prisoner's complaint for injuries to head sustained as result of slip and fall in standing water in prison shower area amounted to negligence at most and was insufficient to raise claim of deliberate indifference to substantial risk of serious harm, even though defendants were aware of standing water and failed to take preventive action).[2]

Because negligence is not actionable under section 1983, Plaintiff's claims against Sheriff

---

[2] The deliberate indifference standard would apply to Plaintiff, even though he was a pretrial detainee at the time of the slip and fall. *See Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (pretrial detainee's episodic act case governed by deliberate indifference standard).

Alford and Lieutenant Pruitt lack an arguable basis in law and should be dismissed as frivolous. *See Marsh v. Jones*, 53 F.3d 707, 711-712 (5th Cir. 1995) (prisoner's claim for monetary relief for damage to her engagement ring during slip and fall accident, allegedly caused by officials' failure to warn of wet floor from leaking air conditioner, presented garden variety negligence claim).

    B.    <u>Vicarious Liability</u>

Even assuming a constitutional violation, Plaintiff's pleadings do not allege direct involvement by Sheriff Alford or Lieutenant Pruitt. Rather Plaintiff seeks to sue them because, by virtue of their job titles, they are responsible for jail equipment and jail personnel under their supervision. (Doc. 11 Answer 2-5.) Supervisory government employees are only liable for their own misconduct, however, and the doctrine of *respondeat superior* does not provide a basis of liability in a section 1983 action. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-49 (2009); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-95 (1978) (supervisory officials cannot be held vicariously liable for their subordinates' actions under section 1983). Supervisory officials may be held liable only if they (1) affirmatively participate in acts that cause constitutional deprivation, or (2) implement unconstitutional policies that causally result in a plaintiff's injury. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).

Here, Plaintiff does not allege facts that indicate Sheriff Alford and Lieutenant Pruitt's personal involvement or acquiescence in the events leading up to his slip and fall. (Doc. 2 at 4; Doc. 11, Answer 2-5.) Nor does Plaintiff allege that Sheriff Alford and Lieutenant Pruitt implemented an unconstitutional policy causing any constitutional deprivation. (*Id.*) Because Plaintiff impermissibly bases his allegations against Sheriff Alford and Lieutenant Pruitt on

6

vicarious liability or *respondeat superior*, his claims are without merit and should be dismissed as frivolous.

C. <u>Medical Care Claims</u>

To state a constitutional violation for denial of medical care, an inmate must allege acts or omissions "sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).[3] The burden of demonstrating deliberate indifference to a serious medical need by correctional officials and healthcare providers is "an extremely high standard to meet." *Domino v. Tex. Dept' of Criminal Justice*, 239 F.3d 752, 756 (2001). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

> [A]n incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle,* 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer,* 511 U.S. at 838.

---

[3] Although Plaintiff was a pretrial detainee during some the events in question, the same standard applies to his medical care claims. *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644-45 (5th Cir. 1996) (*en banc*)) (pretrial detainees may bring constitutional challenges "under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission'"). Because Plaintiff complains of harm suffered as a result of the denial of medical care following his slip and fall, the Court analyzes his claim as an episodic act case, which requires him to establish that the defendants acted with subjective deliberate indifference. *Shepherd*, 591 F.3d at 452.

*Domino*, 239 F.3d at 756.

Even when liberally construed, Plaintiff's pleadings fail to allege deliberate indifference on the part of Dr. Wusterhausen and CEC, but assert, at most, a disagreement of opinion regarding the type of treatment that he received. *See Gobert*, 463 F.3d at 346 (absent exceptional circumstances, a prisoner's disagreement with his medical treatment is not actionable under section 1983). Plaintiff alleges Dr. Wusterhausen and CEC refused to provide a MRI to determine conclusively if he suffered from a "micro fracture," because of a prior back surgery during which rods and pins were implanted in his back. (Doc. 2 at 6; Doc. 11 Answer 7, 9, 11.) He concedes, however, receiving continuous treatment for his back injury despite his incarceration. After his fall, he was transported to the Johnson County Emergency Room, given an x-ray, and prescribed hot packs and pain medications. (Doc. 2 at 6 and attached grievance forms; Doc. 11 Answer 11.) Six days after his slip and fall, on August 24, 2009, Dr. Wusterhausen examined Plaintiff and prescribed a steroid treatment for inflamation. (Doc. 11 Answer 7, 11.) During a follow-up visit on October 6, 2009, Dr. Wusterhausen ordered a CT-scan because Plaintiff's bruises and contusions were still visible. (*Id.* Answer 7) Since the results of the CT-scan were within normal limits, Johnson County personnel ultimately concluded the doctor had done all that he could and declined to order an MRI. (Doc. 11 Answer 9, 11).

Prisoners are not entitled to unqualified access to health care, to-wit, the "best [medical care] that money could buy." *Mayweather v. Foti*, 958 F.2d 91, 91(5th Cir. 1992); *see also Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981) (the test in balancing the needs of prisoner versus the needs of detention center "is one of medical necessity and not one simply of

desirability"). Plaintiff received adequate, continuous treatment for his back injury. Dr. Wusterhausen and CEC's decision not to order a MRI is a question of medical judgment, which does not amount to deliberate indifference. *Estelle*, 429 U.S. at 107 ("whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment"). Because Plaintiff alleges nothing more than a difference of opinion as to the correct medical treatment, his allegations do not constitute an actionable civil rights claim, but, at most, a possible claim of medical malpractice appropriately addressed under state law. *Id.* at 107-108.

Accordingly, Plaintiff's claims against Dr. Wusterhausen and CEC lack an arguable basis in law and should be dismissed as frivolous.

### D. Supplemental Jurisdiction

To the extent Plaintiff seeks to rely on Texas tort law, the District Court should decline to exercise supplemental jurisdiction over his state claims. *See* 28 U.S.C. § 1367(c)(3) (district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction").

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the District Court summarily **DISMISS** the complaint with prejudice as frivolous, *see* 28 U.S.C. § 1915A(b), and **DECLINE** to exercise supplemental jurisdiction over Plaintiff's negligence claims, if any. *See* 28 U.S.C. § 1367(c)(3). The dismissal of this case will count as a "strike" or "prior occasion" within the meaning 28

U.S.C. § 1915(g).[4]

The Clerk of the Court is **directed** to terminate the case referral.

SIGNED May 20, 2011.

／s／ Renée Harris Toliver
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

／s／ Renée Harris Toliver
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[4] Section1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.